IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANTHON CALIX-HESTICK,                    )
                                         )
            Plaintiff,                   )
      v.                                 )
                                         )      Case No. 1:21-cv-971 (AJT/IDD)
LOUIS DEJOY, *Postmaster General,*       )
*United States Post Office*,             )
                                         )
            Defendant.                   )
_____  )

**MEMORANDUM OPINION & ORDER**

Plaintiff Anthon Calix-Hestick, a disabled veteran, became an employee of the United

States Postal Service ("USPS") in October 2015. Approximately 4 months later, on March 1, 2016,

Plaintiff's second-line supervisor planned to terminate Plaintiff's employment due to a poor

attendance record but rescinded that decision upon learning that Plaintiff's absences were caused

by VA medical appointments. At that meeting, Plaintiff requested a standing mat due to pain in

his knees. USPS first sent Plaintiff home without pay for requesting a standing mat and then

terminated him for his answers to open-ended questions on an application form calling for

subjective-based answers.

Plaintiff has filed claims for discrimination, failure to accommodate and retaliation under

the Rehabilitation Act 1973, 29 U.S.C. §§ 791, 793 and 794. *See* Complaint [Doc. No. 1].[1]

Defendant Louis DeJoy, Postmaster General, moves for summary judgment on all of Plaintiff's

claims (the "Motion"). [Doc. No. 57]. Despite inconsistences in its explanations for its actions,

USPS maintains that it lawfully sent Plaintiff home to fill out necessary paperwork for safety and

---

[1] Plaintiff also has asserted a claim for harassment/hostile work environment, *see* [Doc. No. 66-11], which he has abandoned, *see* [Doc. No. 65], at 1 n.1, and will be **DISMISSED**.

liability purposes and terminated Plaintiff for demonstrably false answers on his medical questionnaire. Upon consideration of the Motion, the opposition thereto, the arguments of counsel at the August 12, 2022 hearing, and for the foregoing reasons, the Motion is **GRANTED** as to Plaintiff's discrimination and failure to accommodate claims and **DENIED** as to his retaliation claims.

## I.     BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff, Anthony Calix-Hestick, is a veteran of the U.S. Marine Corps. [Doc. No. 58] (Defendant's Statement of Undisputed Facts (hereinafter "DSUF")), ¶ 5. On August 30, 2015, Plaintiff applied online to a become a USPS Rural Carrier Associate ("RCA") in Stafford, Virginia, completing Form 2591. [DSUF], ¶ 10. Prior to applying to be an RCA, Plaintiff received several medical diagnoses, including lupus, degenerative disc disease in both his back and knees, tinnitus, and post-traumatic stress disorder ("PTSD"). [DSUF], ¶¶ 5-8. On September 28, 2015, USPS extended a conditional offer of employment to Plaintiff via email. [DSUF], ¶ 15.

On the same day Plaintiff received his conditional offer, USPS sent a second email, directing Plaintiff to go online to either accept or decline the conditional offer and complete an online Medical Review Questionnaire ("Questionnaire" or "Form 2485-D"). [DSUF], ¶ 16. Plaintiff completed the Questionnaire, answering "no" to the following set of questions: "[1] Do you have any physical or medical condition[s] or medical limitations that could interfere with your ability to perform the full duties of the job you have been offered?; [2] Are you currently being treated by a medical provider for any health condition or taking any medication that may impair your ability to perform the full duties of the job you have been offered?; [and] [3] Do you now have or have you in the past 2 years had work restrictions imposed by a treating provider that could

affect your ability to perform the full duties of the job you have been offered?" [DSUF], ¶ 17. Based on Plaintiff's "no" responses, USPS did not further investigate Plaintiff's medical suitability for the RCA position. [DSUF], ¶ 17.

Following Plaintiff's completion of the Questionnaire, USPS formally offered Plaintiff the position of RCA in Stafford, Virginia with an effective start date of October 17, 2015. [DSUF], ¶ 18. As a new RCA, Plaintiff would remain in a "probationary period" until he worked 90 days. [DSUF], ¶ 18. Anthony Casteel and Clarence Mays served as Plaintiff's first- and second-line supervisors, respectively. [DSUF], ¶ 18.

On February 27, 2016, Plaintiff asked Casteel for a standing mat to use while he sorted mail due to knee and back pain. [Doc. No. 65] (Plaintiff's Statement of Disputed Material Facts (hereinafter "PSDF")), ¶ 9. On or about March 1, 2016, while still in his probationary period, Plaintiff met with Casteel and Mays. [DSUF], ¶ 23. At that meeting, Mays had intended to terminate Plaintiff due to his attendance record but decided not to terminate him after learning that Plaintiff's absences were due to VA appointments. [DSUF], ¶ 23. During the March 1st meeting, Mays learned of Plaintiff's mat request. [PSDF], ¶ 10. Shortly after that meeting, Mays contacted the USPS Reasonable Accommodation Committee ("DRAC") and conveyed Plaintiff's request for a standing mat. [DSUF], ¶ 24; [PSDF], ¶ 12.

On March 2, 2016, Dr. Carolyn Campbell, the Occupational Health Nurse Administrator for the Richmond District and member of the DRAC, emailed Mays a Return to Duty Form ("RTDF"). [PSDF], ¶ 12. The following day, March 3, Mays met with Plaintiff to provide him the RTDF and instructed him to return the completed form to Dr. Campbell. [DSUF], ¶ 26; [PSDF], ¶ 12. Mays suspended Plaintiff from work and told him he would remain suspended until he returned a completed RTDF. [DSUF], ¶ 26; [PSDF], ¶ 12. Plaintiff then spoke with Campbell shortly after

being suspended. [DSUF], ¶ 26; [PSDF], ¶ 13. Campbell told Plaintiff that "this was the procedure

for anyone who asks for reasonable accommodation – *i.e.* to stop him or her from working in order

to lower the risk of injury." [PSDF], ¶ 13. There is some dispute regarding when Plaintiff returned

the RTDF as well as Forms 2A and 2B—additional forms USPS required Plaintiff and Plaintiff's

physician to complete as part of his DRAC standing mat request—but USPS states that it did not

receive those forms until March 31, 2016 (Form 2A) and April 15, 2015 (RTDF and Form 2B).

[DSUF], ¶¶ 26, 28-29.

On March 4, 2016, the day after being suspended, Plaintiff initiated an EEO complaint by

contacting an EEO counselor at USPS. [DSUF], ¶ 27; [PSDF], ¶ 15. On April 20, 2016, Plaintiff

had an informal teleconference with a labor relations specialist in the HR department (Dion

Mealy), a USPS EEO specialist (Valderie Gee-Parker), and an agency attorney (Christopher

Pearson). [DSUF], ¶ 30. While there is some dispute about what exactly Plaintiff said on the April

20th call, it is undisputed that Plaintiff's disabilities came up on the call and that USPS personnel

asked Plaintiff why he did not disclose those disabilities on his medical questionnaire. [DSUF], ¶

30; [PSDF], ¶ 20.

After the April 20th call, USPS ultimately decided to terminate Plaintiff's employment.

[DSUF], ¶ 33. USPS sent Plaintiff three Notices of Termination, all of which were drafted by

Latinya Alexander, a labor relations specialist in HR, and signed by Mays. [DUSF], ¶ 34. USPS

sent the first two notices on May 10, 2016, and May 11, 2016; however, both contained mistakes.

[DUSF], ¶ 34. The May 10th letter mistakenly: (1) identified Form 2591 instead of the

Questionnaire as the document containing false information; and (2) claimed that Plaintiff was not

performing the essential functions of his position. [DUSF], ¶ 34. The May 11th letter eliminated

the statement that Plaintiff was not performing the essential functions of his position. [DUSF], ¶

34. Both letters stated that Plaintiff was terminated for a "fail[ure] to disclose information [about his] medical history." [DUSF], ¶ 34. USPS sent the third Notice of Termination on June 21, 2016. [DSUF], ¶ 35. That notice stated that Plaintiff "failed to disclose information of [his] medical history on the [Form 2485-D/the Questionnaire] on September 28, 2015 online." [DSUF], ¶ 35. The letter stated that Plaintiff's failure violated the Employee and Labor Relations Manual, Section 661.2.1 (which prohibits making any materially false, fictious, or fraudulent statement or representation) and "removed all opportunity for the Postal Service to determine if that history would have been a disqualification for employment thereby denying [the agency] an opportunity to properly assess [him] as a postal application prior to [his] hire." [DSUF], ¶ 35.

## II.    LEGAL PRINCIPLES

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact."). Whether a fact is considered "material" is determined by the substantive law, and

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all

reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see*

*also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III.   ANALYSIS

In his one-count Complaint, Plaintiff alleges that USPS engaged in discriminatory and

retaliatory conduct by (1) suspending him without pay on March 3, 2016 while he filled out

paperwork for his standing mat request; (2) terminating him from employment on May 10, 2016;

and (3) failing to accommodate his standing mat request. [Compl.], ¶ 46; [Doc. No. 65], at 17-30.

USPS argues all such claims are meritless and should be dismissed with the Court granting

summary judgment in its favor.

### A.  Suspension Without Pay

In opposing Defendant's motion, Plaintiff argues that his suspension claim survives

summary judgment because he both (1) proffers direct evidence of discrimination and retaliation

and (2) satisfies the burden-shifting *McDonnell Douglas* framework. [Doc. No. 65], at 17-22.

#### i.   *Discrimination*

"The Rehabilitation Act prohibits federal agencies from discriminating against qualified

employees based on a disability and provides the exclusive avenue for remedying such

discrimination." *Vanyan v. Hagel*, 9 F. Supp. 3d 629, 637 (E.D. Va. 2014) (citing 29 U.S.C. §§

791, 794a(a)(1)). A plaintiff "may avoid summary judgment on a disability discrimination claim

through two avenues of proof: by presenting direct evidence of discrimination or by relying on the

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).”

*Gillaspie v. Del Toro*, 2022 WL 909386, at *3 (D.S.C. Mar. 29, 2022) (citations omitted); *Farmer*

*v. United States*, 2011 WL 2006361, at *3 (E.D. Va. May 23, 2011) (same). Per the first avenue

of proof (direct evidence), a plaintiff must put forward “evidence of conduct or statements that

both reflect directly on the alleged discriminatory attitude and . . . bear directly on the contested

employment decision.” *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (citation

omitted); *see also Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (“Such

unaided proof may consist of direct evidence that the employer announced, or admitted, or

otherwise unmistakably indicated that [the forbidden characteristic or consideration] was a

determining factor.”).

Absent direct evidence, a plaintiff can nonetheless survive summary judgment by

establishing a prima facie case of discrimination. A prima facie case of discrimination requires a

plaintiff to show that he is (1) disabled; (2) otherwise qualified for the position; and (3) suffered

an adverse employment action solely on the basis of his disability. *Hannah P. v. Coats*, 916 F.3d

327, 342 (4th Cir. 2019) (citation omitted). Then, the burden shifts to the employer to provide a

legitimate, nondiscriminatory reason for its conduct; should the employer make this showing, the

burden shifts back to a plaintiff to demonstrate that the proffered reason is pretextual. *Id.*

The summary judgment record shows that Mays attempted to fire Plaintiff on March 1,

2016, but decided not to after learning that Plaintiff’s absences had been caused by VA medical

appointments. During that same meeting, Mays learned of Plaintiff’s February 27th request for a

standing mat. Two days later, on March 3, Mays handed Plaintiff a Return to Duty Form to

complete, telling Plaintiff that he could not return to work until he completed the paperwork. This

news upset Plaintiff and he called Campbell that same day. According to Plaintiff, Campbell

confirmed what Mays told him, *i.e.*, that he could not return to work until he completed the required

paperwork. [Doc. No. 58-1], Ex. 5 at 110; Ex. 13 (Calix-Hestick Dep. Tr.) 94:4-8 ("I called

[Campbell]. She admitted to it that she sent the paperwork over. She verified the exact same thing

[Mays] did. And she added that it's a liability if someone requests reasonable accommodation gets

hurt, it's a liability risk for the post office.").

In terms of direct evidence, Plaintiff proffers only the "close temporal proximity" between

his reasonable accommodation request and his suspension as well as Campbell's confirmation that

he would remain suspended until he completed the necessary paperwork. While this might show a

causal connection between his suspension and accommodation request, that connection is not

"direct evidence of discriminatory intent, such as 'conduct or statements that . . . reflect directly

the alleged discriminatory attitude.'" *EEOC v. Mfcs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 119

(D. Md. 2019) (determining that evidence that employer terminated plaintiff's employment

"because of 'her alleged failure to return from her disability-related leave'" did not constitute direct

evidence of discriminatory intent or attitude). Accordingly. Plaintiff's ability to survive a summary

judgment motion is necessarily through the *McDonnell Douglas* framework.

Turning then to that framework, only the third element is at issue;[2] namely, whether

Plaintiff suffered an adverse action solely on the basis of disability. "Under 'the Rehabilitation

Act's stringent causation standard,' a plaintiff asserting disability discrimination must establish

that her disability was the *only reason* for her employer's adverse employment action." *O'Meara*

*v. Wormuth*, 2022 WL 67321, at *9 (E.D. Va. Jan. 6, 2022) (citation omitted) (emphasis added).

---

[2] For purposes of summary judgment, USPS concedes that Plaintiff satisfies the first two elements of a prima facie discrimination claim and does not appear to contest the first two elements of Plaintiff's prima facie retaliation claim. [Doc. No. 58], at 16 n.6, 22.

For the reasons discussed below with respect to Plaintiff's retaliation claim, no reasonable factfinder could conclude that Plaintiff's disability was the "sole reason" for the decision to send him home without pay. Therefore, the Court will dismiss Plaintiff's discrimination claim based on his suspension.

      ii.    ***Retaliation***

A prima facie case of retaliation requires a plaintiff to point to evidence that (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action. *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). If the employer puts forward a legitimate, non-retaliatory reason for its conduct, the burden shifts back to a plaintiff to demonstrate that the proffered reason is pretextual. *Id.* Here, causation is the determinative factor in terms of whether Plaintiff makes out a prima facie retaliation case.

The summary judgment record sufficiently evidences that but-for Plaintiff's accommodation request, USPS would not have suspended Plaintiff without pay. Defendant's arguments pertaining to why it sent Plaintiff home without pay speak more to its burden to offer a legitimate, non-retaliatory reason for its conduct and does not serve to defeat Plaintiff's ability to establish a prima facie case. Accordingly, the Court finds that Plaintiff has put forward a prima facie case of retaliation.

Next, USPS satisfies its burden of proffering a legitimate, non-retaliatory reason for its conduct, stating that it sent Plaintiff home to complete the RTDF due to safety and liability concerns. [Doc. No. 71], at 9. The burden, therefore, shifts back to Plaintiff to show pretext.

To meet his burden of pretext, Plaintiff points to conflicting explanations by the two USPS employees involved in the decision to send Plaintiff home. According to USPS, Mays (Plaintiff's

second-line supervisor), told Plaintiff that he could not return to work until the Medical Certification Package was completed," "pursuant to an instruction from Dr. Campbell." [DSUF], ¶ 26; [Doc. No. 65-2], Ex. 2 (Mays Dep. Tr.) at 45:1-8 ("Q. Why did you tell Anthon he couldn't come back to work? A. Because those were the instructions that were given to me. I mean, when Dr. Campbell says the person can't come back until they fill out the paperwork, they can't come back to work. They're a liability to themselves and others. It's her job whether or not that person can work or that person can't work."). Campbell, however, unambiguously testified that she did not give that instruction to Mays. [Doc. No. 66-8], Ex. 29 (Campbell Dep. Tr.) at 14:3-10 ("Q. Did you tell Mr. Mays to tell Mr. Calix-Hestick not come to work until he completed his medical forms? A. I told him that [Calix-Hestick] needed to get the doctor to complete the forms and get them back to me. Q. Did you tell him that Mr. Hestick couldn't come back to work until he did that? A. No."). Campbell also testified that Mays, as the manager who had just tried to fire Plaintiff two days earlier, was solely responsible for the decision to send Plaintiff home to complete the required paperwork. [Doc. No. 71-1], Ex. 46 (Campbell Dep. Tr.) at 38:21-39:4 ("Q. Now, when someone has pending back-to-work/return-to-work information, is it unusual for them not to be working until they submit that information? A. That's a management decision, the manager."). Moreover, the email traffic between Mays and Campbell did not contain an instruction to send Plaintiff home; Campbell's email merely states that Plaintiff "should take the forms immediately to the doctor" but only if "he is stating he cannot perform his duties." [Doc. No. 65-14], Ex. 14 at 1864. Plaintiff disputes that he ever told Mays that he could not perform his duties. [PSDF], ¶ 12; [Doc. No. 65-6], Ex. 6 (Pl. Decl.), ¶ 3.

The inconsistent evidence for why USPS sent Plaintiff home following his accommodation request sufficiently establishes pretext to survive summary judgment. *See Sempowich v. Tactile*

*Sys. Tech, Inc.*, 19 F.4th 643, 652 (4th Cir. 2021) ("To show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." (alteration omitted) (quotation omitted)); *Smith*, 12 F.4th at 421 (noting "lack of contemporaneous documentation and inconsistent justifications for an adverse action could lead reasonable jury to conclude justifications are pretext" (citation omitted)). Therefore, Plaintiff has presented evidence sufficient for a reasonable jury to infer that Mays made the decision to send Plaintiff home without pay based on a retaliatory animus and not pursuant to USPS standard policy or a DRAC member's instruction.[3] Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim based on his suspension from work to complete medical paperwork is denied.

## B.  Termination

For his claim challenging his termination on May 10, 2016, Plaintiff argues that Toni Crosby, the Human Resources Manager for the Richmond District, not his second-line supervisor, Clarence Mays, acted with discriminatory and retaliatory animus by directing Plaintiff's termination, and that Crosby either was the formal decisionmaker or her animus can be imputed to Mays under a "cat's paw " theory. [Doc. No. 65] at 22, 22 n.23.[4] Pursuant to the cat's paw theory, "evidence that a supervisor who was not the formal decisionmaker '[performed] an act motivated by [discriminatory] animus that [was] *intended* by the supervisor to cause an adverse employment action' could support a finding of discrimination 'if that act [was] a proximate cause

---

[3] Additionally, the length of Plaintiff's suspension is subject to genuine disputes of material fact.

[4] Before citing Crosby as the relevant decisionmaker, Plaintiff pursued a theory that Pearson and/or Mays were the true decisionmakers. [Compl.], ¶ 41; [Doc. No. 52], at 12 ("Plaintiff argues that Pearson is *most likely* the decision maker." (emphasis added)). Nonetheless, given that Plaintiff did not have personal knowledge of all of the facts pertaining to the identity of the decisionmaker, including multiple emails from or involving Pearson which are covered by the attorney-client privilege, Plaintiff's previous position with respect to who was the decision-maker does not now preclude his contention that that Crosby was the decisionmaker—which has sufficient factual support in the record— given the Court's prior determination regarding Pearson's non-involvement in Plaintiff's termination, which the Court made based on an *ex parte in camera* review of documents. [Doc. No. 52], at 13 n.8.

11

of the ultimate employment action.'" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 & n.3 (2011)). In other words, "an employer may be liable for the retaliatory actions of a subordinate [or supervisor] who lacked formal decision-making power if the subordinate's [or supervisor's] actions were the proximate cause of the adverse employment action." *Huff v. Buttigieg*, 42 F.4th 638, 647 (7th Cir. 2022).

Here, Mays signed all three termination letters, [Doc. No. 65-21], Ex. 21, having the authority to do so, [Doc. No. 65-2], Ex. 2 (Mays Dep. Tr.) at 61:11-17. Therefore, according to USPS, Mays is the formal decisionmaker and any unlawful animus from Crosby, or anyone else, can only be imputed to Mays through a cat's paw theory. The Court, however, need not reach the applicability of cat's paw,[5] at least at this point, because Plaintiff puts forward sufficient evidence to raise a genuine dispute of material fact such that a reasonable trier of fact could determine that Crosby was the pertinent decisionmaker. *See, e.g.*, [Doc. No. 66-1], Ex. 22 (Crosby Dep. Tr.) at 12:15-23 (explaining that her role in terminations of probationary employees, which Plaintiff was, is to review documentation sent to her from various post offices and "determine if [the probationary employee] should or should not be separated"). Crosby's April 22, 2016, email provides further support for the inference that she directed the termination as she emailed multiple

---

[5] To succeed on his cat's paw theory, Plaintiff must "show (i) that [Crosby] was 'motivated by [retaliatory] animus' and (ii) that [Crosby's] actions were 'a *proximate cause*' of the ultimate employment action.'" *Nifong v. SOC, LLC*, 234 F. Supp. 3d 739, 758 (E.D. Va. 2017) (quoting *Staub*, 562 U.S. at 422). The difficulty with Plaintiff's evidence in terms of Crosby is that he is relying on the *McDonnell Douglas* framework to bring his claim and there is a "doctrinal tension with plaintiff's use of the cat's paw theory under the *McDonnell Douglas* framework because 'the cat's paw theory originated in the context of mixed-motive discrimination claims, not claims pursued through the *McDonnell Douglas* burden-shifting framework,'" as the cat's paw theory "is premised on a biased subordinate." *Afrasiabipour v. Penn. Dep't of Trans.*, 469 F. Supp. 3d 372, 386 (E.D. Pa. 2020) (internal citations omitted); *see also Diaz v. Tyson Fresh Meats, Inc.*, 643 F.3d 1149, 1551 (8th Cir. 2011) (noting the "uneasy marriage between the *McDonnell Douglas* framework and a cat's paw theory of employer liability."). The case law is unclear in terms of whether Plaintiff may use the same evidence that might establish pretext under *McDonnell Douglas* to show that Crosby was biased for purposes of cat's paw theory of liability. *See Afrasiabipour*, 469 F. Supp. 3d at 387 (incorporating cat's paw theory into pretext prong of *McDonnell Douglas* and requiring "plaintiff to satisfy all the elements of cat's paw liability in order to prove pretext"); *see also Chattman v. Toho Tena Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012) (non-decision maker supervisor made three racist statements such that "no inference [was] required to gleam from those statements that [supervisor] harbored racial animus towards African Americans").

individuals, including Clarence Mays, instructing  that "We need to move forward with the termination." [Doc. No. 66-4], Ex. 25 at 320-21. Moreover, Mays' own deposition testimony substantially undermines USPS's position that he was the formal decisionmaker. Although it is true that Mays testified that he could have refused to sign the termination letters, [Doc. No. 65-2], Ex. 2 (Mays Dep. Tr.) at 61:13-17 ("Q. Could you have declined [to sign the termination letter]? A. Why would I? Q. Could you have? . . . A. Of course I could have."), other parts of his testimony allow for a reasonable inference that he believed he lacked the ability to exercise his own, independent judgment about whether to terminate Plaintiff:

> Q. And before you [signed the termination letter], where did you get the information you relied upon for that letter?
>
> A. So that information would have come from Dr. Campbell, Dion, HR, and labor. Once they pulled the information together, *they make the determination* that they did. *They came up with a plan and my job was to execute that plan*.
>
> ***
>
> Q. So was it your decision to fire Anthon, or did someone else make it?
>
> A. It was my job to *enforce the plan that had been put in place*; to execute the plan.
>
> ***
>
> Q. Did someone recommend to you that he be terminated, but give you the option not to terminate him?
>
> A. There [were] no options. Options *were taken away* after they collaborated and came up with their findings.

[*Id.*], (Mays Dep. Tr.) at 58:10-16, 58:21-59:3, 59:9-13 (emphases added). Mays also did not know the reason for Plaintiff's termination, testifying that he thought Plaintiff was terminated because of a failure to return his RTDF to Campbell. [*Id.*], (Mays Dep. Tr.) at 62:2-63:18. Drawing all reasonable inferences in Plaintiff's favor, as the Court must on a motion for summary judgment,

13

the Court finds that a reasonable trier of fact could find for Plaintiff on his claim that Crosby was the decisionmaker.

Turning back to Plaintiff's prima facie case for both his retaliation and discrimination claims, the deciding issue is whether Plaintiff sufficiently satisfies the third element, i.e., causation.[6]

### i.   *Discrimination*

There is simply not enough in the record for a factfinder to determine that the sole reason Crosby made the decision to terminate Plaintiff was because of his disabilities. For instance, Crosby made the purported decision to terminate 4 days before learning of Plaintiff's DRAC process. [Doc. No. 66-4], Ex. 25 at 320-21. And, as discussed below, the evidence allows the reasonable inference that Crosby moved to fire Plaintiff pursuant to a retaliatory animus, not because of Plaintiff's disabilities. Accordingly, Plaintiff cannot satisfy the Act's "rigorous [causation] standard[,]" *O'Meara*, 2022 WL 67321, at *9,[7] and Plaintiff's discrimination claim based on his termination must be dismissed.

### ii.   *Retaliation*

Recent Fourth Circuit precedent makes clear that meeting the "causation" element for a retaliation claim at the "prima facie stage is not an onerous burden." *Smith*, 12 F.4th at 417 (quoting *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018)). "Indeed, 'very little evidence of a causal connection is required to establish a prima facie case of retaliation.'" *Id.* (quoting *Roberts v. Glenn Indus. Grp.*, Inc., 998 F.3d 111, 122 (4th Cir. 2021)). Mere temporal proximity may be

---

[6] As noted above, causation for a prima facie case of discrimination requires a plaintiff to show that he suffered an adverse employment action solely on the basis of his disability and causation for a prima facie case of retaliation requires a plaintiff to show that there is a causal connection between the protected activity and the adverse action.

[7] The Court also finds that any unlawful animus on behalf of Alexander, to the extent it exists, cannot be imputed to Crosby under the cat's paw theory.

enough. *Strothers*, 895 F.3d at 335-36 ("An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity.").

Crosby became aware of Plaintiff's EEO activity on April 21, 2016. [Doc. No. 66-2], Ex. 23 at 324-25 (subject line of email: "Anthon Calix-Hestick EEO"). The summary judgment record supports, therefore, the inference that she made the decision to fire Plaintiff soon, if not immediately, after learning of the protected activity. That is enough to satisfy Plaintiff's prima facie burden. USPS proffers a non-retaliatory reason for Plaintiff's termination: falsification of his employment application. [Doc. No. 58], at 19-20. Therefore, the burden shifts back to Plaintiff to show pretext.

Despite USPS's claims to the contrary, the summary judgment record is simply riddled with inconsistencies that allow of a reasonable trier of fact to find that USPS's reasons for Plaintiff's termination were pretextual.

Here, the primary facts pertaining to Plaintiff's termination stem from an April 20th call between Plaintiff, Dion Mealy, Valderie Gee-Parker, and Christopher Pearson. During the call, or soon thereafter, Mealy and Pearson formed the belief that Plaintiff admitted to lying on his Medical Review Questionnaire as part of his application process. [DSUF], ¶ 30.[8] USPS, however, does not contend that any termination decision was based on Mealey or Pearson's recollections or opinions stemming from the April 20th call; instead, it argues that the termination decision was made only after HR conducted an independent investigation. [Doc. No. 58], at 19-20. Although there is some dispute and/or unclarity about which USPS participant notified Human Resources about the

---

[8] Plaintiff disputes that he said he lied on his questionnaire, characterizing the interview as an aggressive interrogation mainly by attorney Pearson. [PSDF], ¶ 20.

contents of the April 20th call,[9] the summary judgment record clearly shows that Crosby initiated the investigation into whether Plaintiff provided false information during the job application process. [DSUF], ¶ 32; [PSDF], ¶¶ 23-24.

Plaintiff's key piece of evidence is an email chain between Crosby and her subordinate, Latinya Alexander (a Labor Relations Specialist) and others. On April 22, 2016, the day after Crosby assigned the task of investigating Plaintiff's medical questionnaire answers to Alexander, Crosby sent a follow-up email to Alexander as well as Mealy, Campbell, and Mays, stating "We need to move forward with the termination." [Doc. No. 66-4], Ex. 25 at 321. In that same email, Crosby mentioned the need to collect various specific documentation, including Plaintiff's application, and any other documents "that will support the termination." [*Id.*] Four days later, on April 26, Alexander emailed Crosby, asking if they were "still terminating" the Plaintiff to which Crosby only replied, "My message says terminate." [*Id.*], at 320. Alexander responded: "Yes, I read that your message *said to terminate*; but I have *not received any information* from any of those people you name that need to send me the information." [*Id.*] (emphasis added).

As Plaintiff contends, this email chain allows for a reasonable inference that USPS's decision to terminate Plaintiff was made well before any investigation was initiated or completed. *See Smith*, 12 F.4th at 421 (pretext where government agency supervisor made decision to terminate plaintiff despite not conducting "even the most basic factfinding" or "confront[ing] [plaintiff] with her concern"). Although Alexander did perform an investigation prior to Plaintiff's May 10th termination, it appears limited and preliminary, relying on only 4 documents and not

---

[9] On April 21, 2016, Pearson emailed David Mills (a USPS manager), Toni Crosby, Dion Mealy, and several attorneys. [Doc. No. 25-2], Ex. B-1 (USPS Am. Privilege Log) at 7; [Doc. No. 66-2], Ex. 23. The contents of Pearson's email are covered by the attorney-client privilege and are thus redacted. However, his EEOC declaration appears to imply that he referred the contents of the April 20th call to Mills and others. [Doc. No. 58-1], Ex. 7 (Pearson Decl.), ¶ 11 ("The April 2016 conversation was referred to USPS's Occupational Health Nurse, Human Resources, and Legal Department."). Crosby testified at her deposition, however, that Dion Mealy raised concerns over Plaintiff's statements on the April 20th call. [Doc. No. 66-1], Ex. 22 (Crosby Dep. Tr.) at 17:16-22.

involving an interview with Plaintiff, [PSDF], ¶¶ 27, 30, and, more importantly, generally unsupportive of USPS's reason for the termination: Plaintiff's falsification of his medical questionnaire. *See, e.g.*, [Doc. No 66-8], Ex. 29 (Campbell 2017 Dep. Tr.) at 33:7-10 ("Q. Did you believe that [Plaintiff] . . . gave false answers to the medical questions? A. No."), 37:9-11 ("Q. Were you surprised when they moved to terminate [Plaintiff]? A. I'm going to say, yes."); [Doc. No. 66-7], Ex. 28 (Alexander 2022 Dep. Tr.) at 25:15-19 ("Q. [Plaintiff] was terminated because he didn't disclose some medical conditions he had even though they didn't affect his ability to do his job? A. Yes.").[10]

Moreover, the termination letters themselves contain multiple inconsistences, including the first letter on May 10, 2016, which noted that one of the reasons for Plaintiff's termination was his purported "failure to perform the essential functions of the" RCA position. [Doc. No. 65-21], Ex. 21 at PageID# 1507. Nor does Plaintiff's failure to disclose his various medical conditions, coupled with that non-disclosure cited as a reason included in the May 10th and 11th letters, necessarily require dismissal of his retaliation claim, as he had already commenced an informal EEO proceeding which, as the Court previously found, placed USPS in a litigation position. [Doc. No. 52] at 14; *Jacobs v. N.C. Admin Office of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015) (plaintiff may prove pretext "by demonstrating that the asserted justifications, even if true, are post hoc rationalizations invented for purposes of litigation." (citation omitted)).

Accordingly, taking the summary judgment record as a whole, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has presented a genuine dispute of material fact regarding whether the reasons for Plaintiff's termination were pretextual and actually because of a retaliatory animus.

---

[10] Plaintiff also points to several shifting explanations from Alexander, all of which support the reasonable inference that she was simply carrying out Crosby's pre-determined directive to terminate Plaintiff. [PSDF], ¶¶ 29-33.

C. Failure to Accommodate

To prevail on a failure-to-accommodate claim under the Rehabilitation Act, "a plaintiff must show: (1) that [he] was an individual with a disability within the meaning of the statute; (2) that the employer had notice of [his] disability; (3) that with reasonable accommodation [he] could perform the essential functions of the position; (4) that the employer refused to make such accommodations." *Smith*, 12 F.4th at 414. As USPS correctly points out, Plaintiff adamantly contends that he could perform the essential functions of the RCA position. [Doc. No. 58], at 28. Therefore, Plaintiff was not entitled to the standing mat as he did not require the mat to perform all the essential functions of an RCA. *See Jacobs*, 780 F.3d at 581 ("An employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform *all* of the essential functions of her position."); *Sturgill v. Norfolk S. Ry. Co.*, 391 F. Supp. 3d 598, 608 n.9 (E.D. Va. 2019) (dismissing failure-to-accommodate claim where plaintiff pled "that he did not need any accommodation to perform" his job). Accordingly, Plaintiff's failure-to-accommodate claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 57] is **GRANTED** in part and **DENIED** in part. It is granted as to his discrimination, failure-to-accommodate, and harassment/hostile work environment claims, which are **DISMISSED**; and otherwise **DENIED** as to his retaliation claims.

The Clerk is directed to forward a copy of this Order to all counsel of record.

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
September 19, 2022